# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DELBERT JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 4:18CV500 RLW |
| ) | |
| UNITED STATES POSTAL SERVICE, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Postmaster General Megan Brennan's Motion to Dismiss the Second Amended Complaint. (ECF No. 37) The motion is fully briefed. After careful consideration, the Court grants Brennan's motion.

## BACKGROUND

Plaintiff Delbert Jackson began his employment with the United States Postal Service ("USPS") in October 1994 as a casual clerk. (Second Am. Compl., ECF No. 31, ¶ 12) In October 2001, he was transferred within USPS and began to work as a letter carrier. (*Id.* at ¶ 13) While serving as a letter carrier, Plaintiff was represented by the exclusive bargaining unit for letter carriers, the National Association of Letter Carriers ("NALC"), and paid dues to his local chapter, Local 314. (*Id.* at ¶¶ 14-15) Plaintiff was again transferred within USPS in December 2001 and began service as a mail handler, a position in which he continues to serve as of the initiation of this lawsuit. (*Id.* at ¶ 16)

When Plaintiff transferred from letter carrier to mail handler, a representative of NALC allegedly informed him that "the otherwise compelled membership fees for union dues would no longer be withheld from his wages because NALC could not represent his interests as he

switched positions and no longer served as a letter carrier." (*Id.* at ¶ 17) Plaintiff then contacted a human resources ("HR") representative at USPS who told him that, due to his change in position within USPS, his interests would be represented the exclusive bargaining unit for the mail handlers work group: the National Postal Mail Handlers Union ("NPMHU"). (*Id.* at ¶¶ 18-19) According to Plaintiff, the HR representative told him that his membership dues would be remitted to NPMHU from that point forward while he worked as a mail handler. (*Id.* at ¶ 20) Plaintiff claims he continued to authorize USPS to withhold membership fees for union dues from his wages to be remitted to NPMHU on his behalf for the next 16 years. (*Id.* at ¶ 21)

In early 2017, Plaintiff contacted NPMHU concerning a matter related to his employment. (*Id.* at ¶ 22) NPMHU, however, told Plaintiff it was unable to assist him as he was not a dues-paying member of the labor union. (*Id.* at ¶ 23) Plaintiff contacted an HR representative at USPS[1] who confirmed that his membership dues had continued to be withheld from his wages and remitted to NALC. (*Id.* at ¶ 25) Plaintiff asserts he intended to cancel his membership – and related authorization to withhold union membership fees – with NALC in order to join NPMHU when he previously spoke to an HR representative once his job position changed. (*Id.* at ¶ 24) The HR representative at USPS instructed Plaintiff to contact NALC about representing him in his employment-related matter. (*Id.* at ¶¶ 26-27) NALC, however, informed Plaintiff that it could not represent him because he was no longer a letter carrier. (*Id.* at ¶ 27) Plaintiff thereafter requested a refund of the withholdings that had been remitted to NALC, but his request was denied. (*Id.* at ¶¶ 28-29) He further states he has since informed NPMHU that he no longer wishes to be a member. (*Id.* at ¶ 34)

---

[1] It appears from the Second Amended Complaint that this HR representative not the same individual with whom Plaintiff spoke when he initially transferred from letter carrier to mail handler.

In his Second Amended Complaint, Plaintiff names Brennan (individually and in her official position as postmaster general), NALC, and the NPMHU as defendants (referred to collectively as "Defendants").[2] He alleges USPS continued to unlawfully withhold membership fees from his wages and remit such funds as union dues to NALC despite his specific request to change his union membership to NPMHU and despite all Defendants knowing his employment had changed such that NALC no longer could represent his interests. (*Id.* at ¶¶ 32-37) Plaintiff argues he is entitled to full reimbursement of the membership fees for union dues that were unlawfully withheld by USPS and provided to NALC and NPMHU, along with interest. (*Id.* at ¶ 38) Specifically, Count I asserts a claim of unjust enrichment against NALC and NPMHU (*Id.* at ¶¶ 39-43); Count II asserts a claim of money had and received against NALC and NPMHU (*Id.* at ¶¶ 44-48); Count III asserts a claim against all Defendants for violations of his constitutional rights under the First and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 8 and 9 of the Missouri Constitution (*Id.* at ¶¶ 49-54); and Count IV seeks a permanent injunction and declaratory relief against all Defendants (*Id.* at 10-11).

Brennan filed a Motion to Dismiss the Second Amended Complaint (ECF No. 37), which is fully briefed and ready for disposition.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the

---

[2] In Plaintiff's original petition filed in state court, he named only USPS and NALC as defendants. (ECF No. 2) USPS then filed a Motion to Dismiss and argued, *inter alia*, that the doctrine of sovereign immunity barred Plaintiff from bring his claims against it. (ECF Nos. 17-18) Plaintiff then sought and was granted leave to file a Frist Amended Complaint in which he named Cathy S. Vaughn, Executive Postmaster for St. Louis, as a new defendant. (ECF Nos. 21-24) USPS filed a renewed Motion to Dismiss the First Amended Complaint and noted Vaughn had not been served as required by Federal Rule of Civil Procedure 4(i)(3). (ECF Nos. 26-27) Plaintiff then sought and was granted leave to file a Second Amended Complaint in which he named Brennan, NALC, and NPMHU as defendants and did not name USPS. (ECF Nos. 28-31) The factual allegations in each iteration of Plaintiff's complaint remain essentially identical. (ECF Nos. 2, 24, 31)

United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998) (internal citations and quotation marks omitted). To dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Swiish v. Nixon*, No. 4:14-CV-2089 CAS, 2015 WL 867650, at *2 (E.D. Mo. Feb. 27, 2015) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)). "The standard for a motion to dismiss under Rule 12(b)(6) applies equally to a motion to dismiss for lack of subject matter jurisdiction which asserts a facial challenge under Rule 12(b)(1)." *Id.* Accordingly, a court assessing a facial challenge under Rule 12(b)(1) assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant as it would in a motion to dismiss under Rule 12(b)(6). *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015); *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

## DISCUSSION

Brennan argues Plaintiff's claims against her in her individual and official capacity should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). She further asserts that, because 42 U.S.C. § 1983 does not provide Plaintiff with colorable federal claims against her in her individual or official capacity, he cannot seek a permanent injunction or declaratory relief.

### I. Claims against Brennan in her individual capacity

*(a) Liability for federal agents under § 1983*

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Section 1983

provides no substantive rights; it merely provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (section 1983 "merely provides a method for vindicating federal rights elsewhere conferred"). To state a claim under § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Brennan argues § 1983 cannot be invoked to bring claims against federal employees. Section 1983 specifically imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State* or Territory or the District of Columbia" deprives someone of "any rights, privileges, or immunities secured by the Constitution and laws." (Emphasis added). This language means that only *state* actors, rather than federal actors, can be held liable under § 1983.[3] *Mehrkens v. Blank*, 556 F.3d 865, 870-71 (8th Cir. 2009); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). Because postmaster general of the United States is a federal position, Brennan concludes Plaintiff cannot assert claims against her pursuant to § 1983.

The Supreme Court has established that plaintiffs can sue individual federal agents for violations of constitutional rights in certain circumstances. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395-96 (1971), the Supreme Court held plaintiffs can sue federal agents for violations of the Fourth Amendment's prohibition against unreasonable search and seizures. The Supreme Court later extended the principal outlined in

---

[3] Plaintiff argues that "federal courts have jurisdiction over suits brought pursuant to 42 USC § 1983, as it is the statute that creates a remedy for violations of federal rights committed by persons acting *under color of law*." (ECF No. 46, at 4) (emphasis added) As fully explained below, this assertion ignores § 1983's clear language imposing liability on officials acting *under the color of state* law and mischaracterizes Supreme Court precedent regarding when federal agents can be liable for constitutional violations.

- 5 -

*Bivens* to violations of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (sex-discrimination), and the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14, 24-25 (1980) (failure to provide adequate medical treatment). "These three cases—*Bivens, Davis,* and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."[4] *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Moreover, the Supreme Court "has urged caution before extending *Bivens* remedies into any new context" and "[made] clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* (internal quotation marks omitted) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *Carlson*, 446 U.S. at 18). Such a "special factor counselling hesitation" is one that "must cause a court to hesitate before answering . . . in the affirmative" the inquiry "whether the

---

[4] In *Abbasi*, the Supreme Court specifically noted it has "'consistently refused to extend *Bivens* to any new context or new category of defendants' . . . for the past 30 years." 137 S. Ct. at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

> For example, the Court declined to create an implied damages remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas*, 462 U.S. 367, 390, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); a race-discrimination suit against military officers, *Chappell v. Wallace*, 462 U.S. 296, 297, 304–305, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671–672, 683–684, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473–474, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); an Eighth Amendment suit against a private prison operator, *Malesko, supra*, at 63, 122 S.Ct. 515; a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007); and an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard*, 565 U.S. 118, 120, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012).

*Id.*

Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

Plaintiff's claims clearly present a new context for a *Bivens* claim as his case involves alleged constitutional violations that are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *See id.* at 1879. Plaintiff's claims against Brennan allege she violated his rights under the First and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 8 and 9 of the Missouri Constitution by compelling him to withhold membership fees from his wages and remit such funds as union dues without his authorization. As in *Abbasi*, the alleged constitutional violations Plaintiff asserts in this case

> bear little resemblance to the three *Bivens* claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma.

137 S. Ct. at 1860 (citing *Bivens*, 403 U.S. 388; *Davis*, 442 U.S. 228; *Carlson*, 446 U.S. 14). Consequently, the Court must perform a "special factors" analysis regarding Plaintiff's claims.

The claims at issue in *Abbasi* concerned the federal government's policy of detaining undocumented immigrants in the aftermath of the terrorist attacks on September 11, 2001. *Id.* at 1851. Specifically, the plaintiffs in *Abbasi* were six men of Arab or South Asian descent (five of whom were Muslim) who alleged they were detained for periods between three and eight months before eventually being removed from the United States. *Id.* at 1853. The plaintiffs brought *Bivens* claims against, among others, former Attorney General John Ashcroft, former FBI Director Robert Mueller, and former Immigration and Naturalization Service Commissioner James Ziglar. *Id.* The district court dismissed the claims against these executive branch officials, but the court of appeals reversed the lower court and reinstated the plaintiffs' claims against those executive branch officials. *Id.* at 1854.

In reversing the court of appeals, the Supreme Court in *Abbasi* noted that "a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Id.* at 1860 (quoting *Malesko*, 534 U.S. at 74). Allowing a *Bivens* action to challenge a general government policy "would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Id.* The Supreme Court held that "[t]hese consequences counsel against allowing a *Bivens* action against the Executive Officials, for the burden and demand of litigation might well prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Id.* "Allowing a damages suit in this context, or in a like context in other circumstances, would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch." *Id.* at 1861.

Like the defendants in *Abbasi*, Brennan is an officer within the executive branch.[5] Therefore, similar considerations are paramount in this case. As postmaster general, Brennan is the chief executive officer of USPS. *Megan J. Brennan, Postmaster General and Chief Executive Officer*, USPS, https://about.usps.com/who/leadership/officers/pmg-ceo.htm (last updated Feb. 2019). Permitting Plaintiff's claims against her to proceed would inevitably involve questions and discovery related to USPS's formulation and enforcement of policies regarding its approximately 630,000 employees and their respective union memberships. *See id.* Supreme Court precedent clearly counsels against allowing such a *Bivens* claim to proceed here.

The Eighth Circuit has provided additional guidance and held that "a *Bivens* action cannot lie where affirmative action by Congress provides an alternative remedial system."

---

[5] Brennan erroneously states in her memorandum in support of her motion to dismiss that she is not part of the executive branch. (ECF No. 38, at 6) USPS, however, is "an independent establishment of the executive branch of the Government of the United States." *See* 39 U.S.C. § 201; *see generally U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 740 (2004).

*Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). Specifically, the Eighth Circuit has held that in cases where a USPS employee "possessed rights and had access to grievance procedures provided by the [Postal Reorganization Act], . . . and by the collective bargaining agreement between his union and the Postal Service, . . . he is precluded from seeking relief outside that system." *Id.* at 757-58 (omissions in original) (quoting *Sisley v. Leyendecker*, 260 F.3d 849, 851 (8th Cir. 2001)). Here, Plaintiff could have sought relief under the Postal Reorganization Act, 39 U.S.C. § 1208(b), which provides: "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy." Accordingly, *Bivens* and its progeny counsel against allowing Plaintiff's claims against Brennan to continue in light of these special factors.[6]

### (b) Brennan's personal involvement

Brennan also argues the claims against her in her individual capacity should be dismissed because Plaintiff has failed to allege facts suggesting she was personally involved in the alleged constitutional violations.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018) (emphasis added) (quoting *Iqbal*, 556 U.S. at 676). A plaintiff "must allege specific facts of [the supervisory Government-official's] personal involvement in, or direct responsibility for, a deprivation of [his

---

[6] In Plaintiff's response to Brennan's motion, he further develops his First Amendment argument. (ECF No. 46, at 3) This discussion includes citation to the Supreme Court's recent decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448, 2463 (2018). However, as this Memorandum and Order makes clear, Plaintiff has failed to state a claim against Brennan for any alleged constitutional violation.

or her] constitutional rights." *Id.* (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). "Furthermore, a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Abbasi*, 137 S. Ct. at 1860; *see F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994) ("The purpose of *Bivens* is to deter the *officer*.").

Plaintiff's Second Amended Complaint references Brennan only twice: when he simply states Brennan is the Postmaster General of USPS and when he "seeks an injunction permanently precluding [Brennan] from deducting the membership fees for union dues from Plaintiff's wages." (Second Am. Compl., ECF No. 31, at 2 & 11) Plaintiff does not allege any facts related to specific conduct Brennan *personally* took concerning his wages. *See, e.g., McAlister v. Potter*, 843 F. Supp. 2d 117, 123 (D.D.C. 2012) (dismissing claims against the postmaster general because the complaint did not allege he "personally acted in *any* way, let alone in a way that violated her constitutional rights"). Consequently, the claims against Brennan in her individual capacity are dismissed.

## II. Claims against Brennan in her official capacity

Brennan next argues the claims against her in her official capacity must be dismissed. As the Eighth Circuit has noted, "a suit against [the postmaster general] in his [or her] official capacity is treated as a suit against the Postal Service. It is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475. Here, Plaintiff has failed to argue any congressional waiver of sovereign immunity applies to his case.[7] Consequently, Plaintiff's claims against Brennan in her official capacity are dismissed.

---

[7] Plaintiff seems to suggest sovereign immunity was waived when USPS originally removed the case to federal court. (ECF No. 46, at 1-2) However, one party's filing of a notice of removal does not constitute a waiver of

- 10 -

### III. Injunctive and declaratory relief

Lastly, Brennan argues Plaintiff's request for a permanent injunction and declaratory relief against her fail because he does not have a colorable claim against her. Permanent injunctions and declaratory judgments are not independent causes of actions; rather, they remedies for otherwise-colorable claims. *See Public Water Supply Dist. No. 10 of Cass Cty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003); *State of Mo. ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1334 n.2 (8th Cir. 1997); *Henke v. Arco Midcon, LLC*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010).

As explained above, Plaintiff has failed to state a claim against Brennan for which relief can be granted. Consequently, he cannot seek to permanently enjoin her actions or seek declaratory judgment against her.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Megan Brennan's Motion to Dismiss the Second Amended Complaint (ECF No. 37) is **GRANTED** and Plaintiff's claims against Brennan are **DISMISSED with prejudice**. A separate Order of Partial Dismissal accompanies this Memorandum and Order. The claims against defendants NALC and NPMHU remain pending.

Dated this 25th day of March, 2019.

Ronnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

---

future challenges to subject matter jurisdiction. *See Koscielski v. City of Minneapolis*, 435 F.3d 898, 903 (8th Cir. 2006) (rejecting an argument that a party could not challenge ripeness after it removed the case because such an argument "would require the Court to refuse to consider whether it has subject matter jurisdiction over the case"); *see also Cubb v. Belton*, No. 4:15CV676 JMB, 2015 WL 4079077, at *3 (E.D. Mo. July 6, 2015) (granting USPS supervisor's motion to dismiss pursuant to Rule 12(b)(1) based on sovereign immunity after removing case to federal court). Further, 28 U.S.C. § 1442(a)(1) provides that the United States, federal agencies, or federal officials may remove a case to federal court on the basis that "colorable federal defense to the claims brought in state court" exists, such as sovereign immunity." *Charges of Unprofessional Conduct Against 99-37 v. Stuart*, 249 F.3d 821, 824 (8th Cir. 2001).